UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VLADIMIR M. GOROKHOVSKY,

        Plaintiff,

                                        Case No. 20-cv-1098-pp

    v.

STATE PUBLIC DEFENDER OFFICE,
and KATLYN PAKES,[1]

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO USE PACER.GOV FOR FURTHER PLAINTIFF'S FILLING IN THE MATTER *SUB JUDICE* (DKT. NO. 2), DENYING PLAINTIFF'S MOTION FOR ORDER AND REQUEST FOR SUBSTITUTION OF JUDGE PEPPER (DKT. NO. 5), GRANTING PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE LATE MEMROANDUM OF LAW AND FACT IN OPPOSITION TO DEFENDANT'S MOTION TO DISMIS (DKT. NO. 10), GRANTING PLAINTIFF'S VERIFIED MOTION FOR LEAVE TO ALLOW LATE FILLING OF PLAINTIFF'S MEMORANDUM OF LAW AND FACT IN OPPOSITION TO DEFENDANT'S MOTION TO DISMIS (DKT. NO. 13) GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 8) AND DISMISSING CASE**

---

On July 18, 2020, the plaintiff filed a complaint alleging that the

Wisconsin State Public Defender's Office and Attorney Kathleen Pakes, Director

of the Assigned Counsel Division of the SPD, violated his civil rights under 42

U.S.C. §1983. Dkt. No. 1. The complaint alleges that the defendants

"unjustifiably and pretextually refused to certify" him. Id. at ¶12. The plaintiff

---

[1] The plaintiff's filings refer to defendant Pakes as "Katlyn." The defendants' filings indicate that defendant Pakes' first name actually is Kathleen.

Case 2:20-cv-01098-PP   Filed 01/05/21   Page 1 of 30   Document 14

alleges that the defendants returned his paperwork because it was not properly submitted, which the plaintiff believes was pretext. Id. at ¶14.

Two days after filing the complaint, the plaintiff filed a motion for an order allowing him to use his e-filing privileges via his PACER account for filing documents in this case. Dkt. No. 2. He also filed a motion "for order of substitution" for Judge Pamela Pepper. Dkt. No. 5.

The defendants have filed a motion to dismiss the case. Dkt. No. 8. The court received the plaintiff's opposition brief on September 9, 2020—forty days after the defendants filed their motion. Dkt. No. 10. Five days later, the court received the plaintiff's motion for leave to allow "late filling"[2] of his opposition memorandum. Dkt. No. 13.

The court will grant the plaintiff's motion for leave to e-file, deny the plaintiff's motion for "substitution," grant the plaintiff's motions for leave to file opposition briefs and grant the defendants' motion to dismiss.

I.      **Plaintiff's Motion for Order for Leave to Use PACER.GOV for Further Plaintiff's Fillings in the Matter *Sub Judice* (Dkt. No. 2)**

The plaintiff filed the complaint on July 18, 2020. The plaintiff is a lawyer; he says he has a PACER (an electronic filing) account with the court and that he "is very experienced in proper usage of it." Dkt. No. 2 at ¶¶2-3. He asserts that on June 20, 2020—a month *before* he filed the complaint—he received a call from the clerk of court advising him that he could not use his

---

[2] More than once in various pleadings the plaintiff uses the word "fillings" when it appears likely from the context that he means "filings."

2

PACER account for electronic filings. Id. at ¶4. He asserts that the "Local Rules of this Court do not forbit [sic] pro se plaintiffs who is also an attorneys from using their PACER.GOV account from their electronic pro se filling with this Court." Id. at ¶5. He asks the court to "issue an order allowing his to use his e-filling privileges with PACER.GOV for further electronic fillings with this Court in the matter *sub judice* . . . ." Id. at page 2.

Section I(A)(1) of the United States District Court for the Eastern District of Wisconsin Electronic Case Filing Policies and Procedures Manual (Rev. April 10, 2019) states that "[p]arties proceeding pro se cannot file electronically unless authorized by the court." The procedures do not make a distinction between *pro se* parties who are lawyers and *pro se* parties who are not lawyers; it simply states that a party representing himself or herself cannot file electronically unless authorized to do so by the court.

Since 2002, the plaintiff has filed five *pro se* cases in this district, including this one. Gorokhovsky v. Bank One, *et al.*, Case No. 05-cv-91-CNC; Gorokhovsky v. MBNA America Bank NA, *et al.*, Case No. 06-cv-1120-LA; Gorokhovsky v. Jacob Law Group PLLC, Case No. 12-cv-1188-LA; Gorokhovsky, *et al.* v. Stefantsova, Case No. 19-cv-453-JPS; Gorokhovsky v. State Public Defender Office, *et al.*, Case No. 20-cv-1098-PP. While the court was unable to find any record of anyone calling the plaintiff to tell him that he could not e-file in this case, it could be that at some point during the pendency of one of the plaintiff's *pro se* cases, someone from the clerk's office told him he could not e-file without a court order.

3

But despite the plaintiff's assertion that someone from the clerk's office told him he couldn't, the plaintiff *has* been e-filing in this case. In fact, the plaintiff electronically filed two objections to magistrate authority to decide the case (although he failed to use the court's required form) six days after he claimed that he was told he could not use his e-filing account. Dkt. No. 3 at 2.

Because the plaintiff is an attorney and has an e-filing account that he uses when he represents clients other than himself, and because the plaintiff has been e-filing anyway, the court will grant the motion.

## II.  Plaintiff's Motion for Order and Request for Substitution of Judge Pepper (Dkt. No. 5)

Two weeks after filing his complaint, the plaintiff filed a one-sentence motion asking "for an Order of substitution of Judge Pamela Pepper as assigned on this case on 07-27-2020." Dkt. No. 5. The plaintiff did not file a memorandum in support of the motion and did not cite any rule, authority or facts in support of the motion.

The court suspects that the plaintiff is accustomed to the Wisconsin state-court practice of "substitution." Under Wis. Stat. §801.58(1), any party in a civil case may file a written request with the clerk of court asking for substitution of a new judge for the judge assigned to the case. Wis. Stat. §801.58(2) states that if the request was timely and in proper form, the judge originally assigned to the case "has no further jurisdiction and the clerk shall request the assignment of another judge . . . ." Effectively, a party may have one substitution per case, no questions asked, if the written request was timely and properly filed. Wis. Stat. §801.58(3).

4

This is federal court. The Eastern District of Wisconsin has no substitution procedure. In this federal court, "[e]very motion must state the statute or rule pursuant to which it is made," and except for expedited, non-dispositive motions, must be accompanied by a supporting memorandum or a certificate stating that no memorandum or supporting papers will be filed. Civil Local Rule 7(a) (E.D. Wis.). In federal court, a party is stuck with the judge assigned to the case unless there is a basis for that judge to recuse herself. If a party files a "timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party," the judge must recuse herself. 28 U.S.C. §144. (The affidavit "shall state the facts and reasons for the belief that bias or prejudice exists." Id.) A party may also seek a federal judge's disqualification under 28 U.S.C. §455, if the party can demonstrate that the judge has a bias, prejudice or conflict of the type identified in that statute.

The plaintiff's motion does not comply with Civil L.R. 7 and has not identified any grounds for recusal or disqualification. The court will deny the motion.

**III. Defendants' Motion to Dismiss (Dkt. No. 8), Plaintiff's Opposition to Defendant's Motion to Dismiss and Motion for Leave to File Late Memorandum of Law and Fact in Opposition to defendant's Motion to Dismiss (Dkt. No. 10) and Plaintiff's Verified Motion for Leave to Allow Late Filling of Plaintiff's Memorandum of Law and Fact in Opposition to Defendant's Motion to Dismiss (Dkt. No. 13)**

A. <u>Substance of the Motions</u>

1. *Defendants' Motion to Dismiss (Dkt. No. 8)*

On July 30, 2020, the defendants filed a motion to dismiss, arguing Eleventh Amendment immunity, abstention, failure to state a claim upon which relief can be granted, qualified immunity, the Rooker-Feldman doctrine, claim preclusion or issue preclusion, state sovereign immunity, failure to serve a written notice of claim under Wis. Stat. §893.82(3) and public officer immunity. Dkt. No. 8. The defendants attached a certificate of service indicating that Kristin Cueller, the defendants' legal associate, mailed the documents by first-class mail to "Vladimir M. Gorokhovsky, Gorokhovsky Law Office LLC, 10919 N Hedgewood Ln, Mequon, WI 53092-4907." Dkt. No. 8-1. This is the address on the signature page of the plaintiff's complaint (dkt. no. 1 at 10), and on each of the plaintiff's pleadings (although on some pleadings, he adds "Suite 2A" after the street address, *e.g.*, dkt. no. 2 at 2).

2.  *Plaintiff's Opposition and Motion for Leave to File Late Memorandum (Dkt. No. 10)*

On September 9, 2020—forty days after the defendants filed their motion to dismiss, and nineteen days after the response deadline set by Civil L.R. 7(b)—the plaintiff electronically filed a document titled "Plaintiff's Opposition to Defendant's Motion to Dismiss and Motion for Leave to File Late Memorandum of Law and Fact in Opposition to Defendant's Motion to Dismis [sic]." Dkt. No. 10. The four-page motion first alleges that the plaintiff is "vigorously opposing and objecting to" the motion to dismiss. Id. at ¶2. The motion asserts that the motion "was not mailed or forwarded to the Plaintiff by defense counsel, and the Plaintiff was not provided with a notice of this motion and opportunity to respond and be heard." Id. at ¶3. The plaintiff states that he did not receive

6

notification of the motion via PACER on the date the motion was filed "because he was deprived from usage of PACER e-filing privileges by a clerk of this Court." Id. at ¶4. He claims that he did not receive a copy of the motion to dismiss until September 9, 2020, when he checked PACER. Id. at ¶5.

As to the substance of the motion to dismiss, the plaintiff asserts that "the defendant's argument regarding applicability of Rocker [sic] Feldman doctrine is misplaced because the Plaintiff is not seeking review of prior decertification decisions by the SPD." Id. at ¶7. See also, id. at ¶¶8-11. He asserts that Wis. Stat. §893.82(3) does not apply to a suit under 42 U.S.C. §1983. Id. at ¶12. And he argues that defendant Pakes is not entitled to qualified immunity. Id. at ¶13.

### 3. *Defendants' Reply Brief in Support of Motion to Dismiss (Dkt. No. 11)*

Later that same day, the defendants filed their reply brief in support of their motion to dismiss, dkt. no. 11, followed by a "corrected" reply brief, dkt. no. 12. The defendants cite their certificate of service (dkt. no. 8-1) as proof they served the plaintiff by mail at his correct address. Dkt. No. 12 at 1. They argue that denial of the plaintiff's e-filing privileges is irrelevant because they properly served him by mail. Id. at 2. As to the merits of the motion to dismiss, the defendants concede that Rooker-Feldman does not apply if the plaintiff is not challenging the 2017 decision to decertify him from the panel. Id. at 2. They assert, however, that the plaintiff's state law claims—even if he brought them as pendent claims to his federal civil rights claims—are barred by his failure to file a notice of claim and by the doctrine of sovereign immunity. Id.

7

They argue that the plaintiff's assertion that defendant Pakes personally sabotaged his re-certification efforts while engaging in a plethora of discretionary functions is not sufficient to defeat her qualified immunity defense because it does not demonstrate that Pakes' conduct violated any clearly established statutory or constitutional rights of which a reasonable state official would have been aware. Id. at 3. Finally, the defendants assert that the plaintiff waived opposition arguments to their arguments based on the Eleventh Amendment, the abstention doctrine, Rule 12(b)(6) and claim/issue preclusion. Id. at 4 (citing Fischer v. Wis. Patients Comp. Fund, 256 Wis. 2d 868 (Ct. App. 2002)).

> 4.   *Plaintiff's Verified Motion for Leave to Allow Late Filling of Plaintiff's Memorandum of Law and Fact in Opposition to Defendant's Motion to Dismiss (Dkt. No. 13)*

Four days after the defendants filed their reply brief, the plaintiff e-filed a second motion for leave to allow late filing of plaintiff's memorandum of law in opposition to the defendant's motion to dismiss. Dkt. No. 13. This time the plaintiff attached a fourteen-page brief in opposition to the motion to dismiss. Dkt. No. 13-2. He also filed a document purporting to be a February 28, 2020 email to Pakes, dkt. no. 13-3, and a document purporting to be a February 28, 2020 notice of claim under Wis. Stat. §893.80(1)(a), dkt. no. 13-4.

The plaintiff again asserts that the defendants did not mail him the motion to dismiss. Dkt. No. 13 at ¶3. He insists that the defendants knew of his whereabouts and that his complaint "clearly states the Plaintiffs current mailing address and should have received a curtesy [sic] copy of defendant's

8

motion to dismiss at this address of 10919 N. Hedgewood Ln., Mequon, WI 53092." Id. at ¶5. He asserts that the fact that he "did not received [sic] a curtesy [sic] copy on defendant's motion to dismiss on or about or thereafter July 30, 2020 is consistent with overall pattern of treatment plaintiff received from Director Pakes." Id. at ¶6. The plaintiff reiterates that he did not receive notice of the filing via PACER because he was "ordered" by "a clerk of this Court" not to use his PACER e-filing privileges and that he has reviewed his email records to confirm that he did not receive the PACER alert. Id. at ¶¶7, 10.

B.    Analysis

1.    *Plaintiff's Motions for Leave to File Brief in Opposition (Dkt. Nos. 10, 13)*

Under Federal Rule of Civil Procedure 6(b)(1)(B), when a party is required to take an action within a specific time, a court may, "for good cause," extend the time for the party to take that action on a motion made after the deadline for doing so has expired "if the party failed to act because of excusable neglect." For the court to grant the motion to extend time, the movant must show both good cause and excusable neglect. The Seventh Circuit has instructed that "a judge asked to waive or extend a deadline must evaluate the excuse offered by the party seeking the waive or extension and the consequences to all persons affected by the granting or denying of it." Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd., 646 F.3d 401, 405 (7th Cir. 2011). "The stronger the excuse and the graver the adverse consequences of rejecting it relative to the adverse consequences to the opposing party if the excuse is allowed, the more the balance leans toward granting." Id. (citations omitted).

9

On July 30, 2020—the same day they filed the motion to dismiss—the defendants filed a certificate of service attesting that they mailed the motion to dismiss by first-class mail to the plaintiff at 10919 N. Hedgewood Lane in Mequon, WI—the address the plaintiff put on his complaint and the address to which he insists the defendants should have mailed the motion. Dkt. No. 8-1. In the motion he signed and filed September 9, 2020, the plaintiff asserted that the defendants did not mail him the motion and that he did not receive the motion until he checked PACER that day—September 9, 2020. Dkt. No. 10. Although the September 9, 2020 motion was not sworn, verified or notarized, Fed. R. Civ. P. 11(b)(3) provides that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions" in the motion "have evidentiary support . . . ." The plaintiff made the same representations in his second motion, verified under 28 U.S.C. §1746 under penalty of perjury. Dkt. No. 13.

Given the defendants' contemporaneous certificate of service, the court does not credit the plaintiff's assertions that the defendants did not mail him the motion. It is possible the plaintiff did not receive the mailed motion—it may have gotten lost in the mail, been mis-delivered by the postal worker, been destroyed or intercepted by someone else. If any of those things happened, the plaintiff has stated good cause for the court to extend the deadline for him to

10

respond to the motion to dismiss. There is another possibility—that the plaintiff received the motion and is not being truthful with the court. If the plaintiff's assertions that he did not receive the motion by mail have no evidentiary support, the plaintiff will be subject to sanctions and could be subject to penalties for perjury. Fed. R. Civ. P. 11(c); <u>Alexander v. Caraustar Indus., Inc.</u>, 930 F. Supp. 2d 947 (N.D. Ill. 2013) (dismissing case for lying on verified declaration).

Despite evidence that the defendants mailed the plaintiff a copy of the motion to dismiss, the court will give the plaintiff the benefit of the doubt and will grant his requests for the court to accept his late filings.

   2. *Defendants' Motion to Dismiss (Dkt. No. 8)*

    a. The plaintiff's responses (Dkt. Nos. 10, 13-2)

The court has noted that the plaintiff filed two briefs in opposition to the defendants' motion to dismiss. The first brief—filed on September 9, 2020 and only four pages long—addressed only the defendants' arguments for dismissal under <u>Rooker-Feldman</u> doctrine, the state-law notice requirement and qualified immunity. Dkt. No. 10. The defendants (timely) filed their reply after the plaintiff filed the first opposition brief. Dkt. No. 11.

Five days later, the plaintiff filed his second brief. Dkt. No. 13. Clearly in response to the defendants' assertion that the plaintiff had waived his opposition to several their bases for dismissal, the plaintiff's second brief addressed each of the defendants' arguments. The second brief is the plaintiff's second kick at the proverbial can. He filed a four-page opposition brief (late)

that did not address all the defendants' arguments, and when the defendants pointed out that fact, he filed what amounts to an unauthorized surreply to try to remedy his omissions. Consequently, the defendants have not had time to reply to the second opposition brief.

The court should, in fairness, strike the second brief. Neither the Federal Rules of Civil Procedure nor this court's local rules allow a surreply. The movant gets the last word on the movant's own motion—in this case, the defendants should have the last word on their motion to dismiss. "[S]urreply briefs are rare and discouraged in most districts." Ennin v. CNH Indus. Am., LLC, 878 F.3d 590, 595 (7th Cir. 2017). This court rarely grants leave to file sur-replies. A sur-reply is warranted on the rare occasion that "the movant raises new arguments in a reply brief." Chartraw v. City of Shawano, No. 16-C-807, 2018 WL 1757611, at *6 (E.D. Wis. April 12, 2018) (citing Meraz-Camacho v. United States, 417 F. App'x 558, 559 (7th Cir. 2001)).

Because the court concludes that the case should be dismissed, however, the court will, in an abundance of caution, consider all of the arguments the plaintiff has raised in opposition to the defendants' motion, even though the defendants have been deprived of their right to reply to some of those arguments.

b.    Eleventh Amendment

The defendants first assert that the Eleventh Amendment bars suits by private parties against a state without the state's consent. Dkt. No. 9 at 5. They also assert that Eleventh Amendment immunity extends to state officials and

12

employees if those officials and employees are sued in their official capacity and assert that Pakes is a state employee. Id.

The plaintiff's first opposition brief made no mention of the defendants' Eleventh Amendment argument. Dkt. No. 10. In the second brief, the plaintiff asserted that he was suing Pakes in her individual, not her official, capacity. Dkt. No. 13-2 at 3-4. He also cited something called "Sheuer doctrine" in arguing that plaintiff may sometimes seek damages from state officials who violate their constitutional rights. Id. As to the State Public Defender as an organization, the plaintiff makes the bizarre argument that because he is a citizen of the same state as the State Public Defender, the Eleventh Amendment "is not a bar to plaintiff's action against the state agency of the same state in which he resides." Id. at 5.

The jurisdictional bar of the Eleventh Amendment protects the state and its agencies. Kashani v. Purdue Univ., 813 F.2d 843, 845 (7th Cir.1987). The Seventh Circuit specifically has held that the State Public Defender is an agency of the state and is immune from suit under the Eleventh Amendment. Smith v. LaFollette, No. 93-2639, 1994 WL 142877, at *7 (7th Cir. 1994) ("The public defender is a state agency and is thus immune from suit under the Eleventh Amendment."). Many years ago, the Supreme Court put paid to the plaintiff's argument that the Eleventh Amendment does not apply to a citizen of Wisconsin suing a Wisconsin state agency; in Edelman v. Jordan, 415 U.S. 651, 662-63 (1974), the Court stated that "[w]hile the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court

13

has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." See also, Jones v. Wexford Med., No. 3:19-CV-552-JD-MGG, 2019 WL 3386468, *1 (N.D. Ind. July 26, 2019) (citing Johns v. Stewart, 57 F.3d 1544, 1552 (10th Cir.1995)) (reiterating that the Eleventh Amendment bars "a suit by a citizen against the citizen's own State in Federal Court"). The court must dismiss the plaintiff's claims for damages against the State Public Defender.

While the defendants don't make the argument, there is a related reason for the court to dismiss the State Public Defender. The plaintiff has sued the defendants for civil rights violations under 42 U.S.C. §1983. Section 1983 allows a citizen to sue a "person" who violates his civil rights under color of state law. The State Public Defender is not a "person." It is an arm of the state. Wis. Stat. §§977.01, *et seq.* "[S]tates are not suable 'persons' under 42 U.S.C. § 1983." Phillips v. Baxter, 768 F. App'x 555, 559-560 (7th Cir. 2019) (citing Sebesta v. Davis, 878 F.3d 226, 231 (7th Cir. 2017)). See also, Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989) ("A State is not a person within the meaning of § 1983). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Will, 491 U.S. at 66.

As to Pakes, the director of the State Public Defender's assigned counsel division, the plaintiff insists that he sued her only in her individual capacity. The complaint does not indicate whether the plaintiff sued Pakes in her

individual or her official capacity, so the court must consider both. To the extent that the plaintiff sued Pakes in her official capacity, his suit is barred.

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 . . . (1985). As such, it is no different from a suit against the State itself. See, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 . . . (1985); *Monell* [*v. New York City Dept. of Social Services*, 436 U.S. 658], at 690 . . . [(1978)].

Will, 491 U.S. at 71.

The court will consider the plaintiff's claims against Pakes only to the extent that they are claims against her in her individual capacity.

c.    Abstention Doctrine

The defendants indicate that while the state circuit court affirmed the decision of the State Public Defender board to decertify him, the plaintiff has appealed that order and, as of the date the defendants filed their motion to dismiss, the appeal was pending before the Wisconsin Court of Appeals. Dkt. No. 9 at 1-2 (citing Vladimir Gorokhovsky v. State Public Defender Board, Case No. 2017CV13552 (Aug. 22, 2018, Milwaukee County), *appeal* pending, Appeal No. 2018AP1677 (Ct. App. Dist. 1). The public docket shows that the appeal remains pending. Vladimir Gorokhovsky v. State Public Defender Office, Appeal No. 2018AP001677 (available at https://wscca.wiscourts.gov).

The defendants assert that "[i]nsofar as [the plaintiff] asks this court to take any action regarding the pending state certification proceeding before the SPD Board, this court should abstain and dismiss this action." Dkt. No. 9 at 6. They cite two cases—Younger v. Harris, 401 U.S. 7, 43 (1971) and Spring

15

Commc'ns, Inc. v. Jacob, 571 U.S. 69, 72 (2013). They argue that "[s]ince the beginning of the history of the United States, Congress has generally manifested a desire to permit state courts to try state cases free from interference by federal courts." Dkt. No. 9 at 5.

There are a number of different federal abstention doctrines articulated in cases such as R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941), Younger v. Harris, 401 U.S. 37 (1971), Burford v. Sun Oil Co., 319 U.S. 315 (1943), and Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). The defendants address this complex issue in a single paragraph, citing only to Younger. Dkt. No. 9 at 5.

Younger abstention is appropriate in "exactly three classes of cases: where federal jurisdiction would intrude into ongoing state criminal proceedings, or into civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" Mulholland v. Marion Cty. Elec. Bd., 746 F.3d 811, 815–16 (7th Cir. 2014) (quoting Sprint Commc'ns, Inc. v. Jacob, 571 U.S. 69, 72-73 (2013)). In examining whether a state civil proceeding calls for abstention, "the critical consideration . . . is how closely [the state proceeding] resembles a criminal prosecution." Id. Younger abstention is not warranted unless the state proceeding is a "quasi-criminal proceeding." Mulholland, 746 F.3d at 816.

The defendants have not applied the Younger abstention doctrine to the facts of this case or analyzed whether or how the appeal pending before the

16

Wisconsin Court of Appeals is "quasi-criminal." They state simply that the court should abstain to the extent the plaintiff asks the court to take any action regarding the pending state certification proceeding before the SPD Board. Dkt. No. 9 at 6. Their corrected reply offers little more—a single clause, "the abstention doctrine bars this action, *see Sprint Communications, Inc. v. Jacob*, 571 U.S. 69, 72 (2013)"—in support of this argument. Dkt. No. 12 at 3. The defendants attached the 2018 Milwaukee Court Circuit Court decision affirming the Board's decision to decertify the plaintiff for two years, Dkt. No. 9-1 at 1; the June 25, 2020, SPD letter rejecting his most recent certification application, dkt. no. 9-2; an email dated June 26, 2020, from the plaintiff to the SPD appealing the decision denying his request for SPD re-certification, dkt. no. 9-3; and a July 28, 2020, letter advising the plaintiff that his appeal would be heard at the next scheduled board meeting via ZOOM on September 11, 2020, dkt. no. 9-4.

The plaintiff's first brief in opposition to the motion to dismiss did not address abstention. Dkt. No. 10. His second opposition brief—his unauthorized surreply—addresses only the <u>Buford</u> abstention doctrine (not the <u>Younger</u> doctrine referenced by the defendants) and argues that <u>Burford</u> abstention is not applicable. The plaintiff argues that this case is not based on state law, is not based on difficult or unusual state law and does not relate to state law relating to state administrative or policy processes. Dkt. No. 13-2 at 5-7.

The court already has decided that the plaintiff's claims against the State Public Defender are barred by the Eleventh Amendment. If it had not, however,

the court would not abstain. The defendants did not bother to explain why Younger abstention applies. The plaintiff argues Burford abstention, but that isn't what the defendants argued and they have not had the chance to respond to that argument. The defendants have not articulated a basis for this court to abstain.

d.    Failure to State a Claim

The defendants move for dismissal of the plaintiff's §§1983 and 1985 claims under Rule 12(b)(6) for failure to state a claim upon which a federal court may grant relief. To state a cognizable claim, a complaint must provide more than "abstract recitations of the elements of a cause of action or conclusory legal statements." Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). A plausible claim must include "factual content" sufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The defendants argue that while the plaintiff claims they violated his civil rights under 42 U.S.C. §1983, the plaintiff has not identified any provision of the federal Constitution or federal law violated by their refusal to certify him to represent indigent criminal defendants. Dkt. No. 9 at 6. They speculate that perhaps he means to allege that they deprived him of liberty or property without due process in violation of the Fourteenth Amendment. Id. They argue, however, that even if the plaintiff's complaint could be liberally construed to state a due process claim, Wis. Stat. §977.08(3) and Wis. Admin. Code §PD 1.03-1.05 provide the plaintiff with adequate means to challenge the denial of

18

SPD certification (in the form of a right to a written decision with reasons, an appeal, a hearing and state judicial review). Id. at 6-7.

The plaintiff's first opposition brief did not address this argument. Dkt. No. 10. In his surreply, the plaintiff asserts that he adequately pled all required elements "of deprivation of his protected property right to practice his profession . . . ." Dkt. No. 13-2 at 10. To the extent the defendants argue that the statutes afford due process, the plaintiff responds that he cannot bring a federal civil rights claim in the state courts and asserts "simply speaking the Board of State Bar Defender does not have jurisdiction to entertain such civil rights deprivation claim." Id. at 10-11. Because the court has found that the plaintiff's claims against the State Public Defender are barred by the Eleventh Amendment, it will consider this argument as it relates to Pakes in her individual capacity.

Section 1983 allows any citizen of the United States to sue any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §1983. To state a claim for a violation of §1983, a plaintiff must plead that someone deprived him of a right secured by the federal Constitution or laws of the United States and that whoever deprived him of that right was acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Because §1983 "is not itself a source of substantive rights," the "analysis begins by identifying the specific constitutional right allegedly infringed." Graham v. Connor, 490 U.S. 386, 394 (1989); Baker v. McCollan, 443 U.S.

19

137, 140, (1979) (the "first inquiry" is "to isolate the precise constitutional

violation with which [the defendant] is charged").

The complaint alleges

[t]hat at all times material hereto and while acting under color of
state law of Wis. Administrative Code, PD 1:ch 1;02, the above-
named defendant unjustifiably, falsely and pretentiously refused to
certify the above-named Plaintiff for SPD appointments, whereby
circumventing Wis. Adm. Code PD1: sec. 1:02 and further burdening
Plaintiff's civil rights, including but not limited to the right of
practicing Plaintiff's profession and in particular circumventing his
right to practice criminal defense law in the State of Wisconsin,
being licensed attorney admitted to practice of law of law before the
Supreme Court for the State of Wisconsin since June 12, 2002.

Dkt. No. 1 at ¶17.

"To prove a violation of procedural due process rights, a plaintiff must

show that the State deprived him of a protected liberty or property interest and

that the deprivation occurred without adequate due process." Halfhill v.

Northeast School Corp., 472 F.3d 496, 500 (7th Cir. 2006) (citing Brown v. City

of Michigan City, Ind., 462 F.3d 720, 728 (7th Cir. 2006)). The plaintiff appears

to be asserting that the defendant (Pakes) deprived him of the right to practice

his chosen profession. Dtk. No. 1 at ¶17. The defendants do not dispute that

Pakes was acting under color of state law when she made the administrative

decision to deny the plaintiff recertification. The United States Supreme Court

has held that "[a] State cannot exclude a person from the practice of law or

from any other occupation in a manner or for reasons that contravene the Due

Process or Equal Protection clause of the Fourteenth Amendment." Schware v.

Bd. of Bar Examiners, 353 U.S. 232, 238–39 (1957).

But the plaintiff has not alleged that Pakes denied him the ability to practice law—he does not allege that she took away his license or his academic degree. In fact, the State Bar of Wisconsin's records indicate that the plaintiff is an attorney in good standing. https://www.wisbar.org/directories/pages/lawyerprofile.aspx?Memberid=1036040. The plaintiff alleges only that Pakes denied or interfered with his ability to have his name included on the SPD's list of attorneys eligible to receive appointments to represent indigent criminal defendants not represented by SPD staff attorneys.

The Seventh Circuit has held that "[a] protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract—those 'rules or understandings that secure certain benefits and support claims of entitlements to those benefits.'" Halfhill, 472 F.3d at 500 (quoting Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 943 (7th Cir. 1996)). To determine whether the plaintiff has a constitutionally protected property interest in being on the SPD's list of private lawyers to whom indigent criminal appointments would be directed, the court must determine whether there is any state statute, regulation, municipal ordinance or express or implied contract that secured the plaintiff certain benefits and supported his claim to entitlement to those benefits.

The complaint references "Wis. Administrative Code, PD 1: ch.1;02." Dkt. No. 1 at ¶17. That same paragraph refers to "Wis. Adm. Code PD1: sec. 1:02." Id. The court assumes that this is a reference to WIS. ADMIN. CODE PD §1.02. That statute provides only that the SPD "shall provide the Wisconsin supreme

21

court and the state bar of Wisconsin with materials to insure that every person admitted to the state bar after January 1, 1978, is provided with information for applying for certification under s. 977.08, Stats." The plaintiff does not allege that he was not provided with information for applying for certification, so even assuming without deciding that this section of the administrative code creates a property interest, the plaintiff has not alleged that Pakes deprived him of that interest.

The complaint mentions sections 1.03 and 1.035 of the same administrative code. Dkt. No. 1 at ¶20. WIS. ADMIN. CODE PD §1.03 governs original certification process. Specifically, §1.03(4) governs decertification. It provides that "[u]pon a finding of cause, the state public defender may decertify the attorney and exclude the attorney from any or all of the certification lists in s. PD 1.04." WIS. ADMIN. CODE PD §1.03(4). Section 1.03(5) is a non-exclusive list of reasons the SPD may suspend or decertify a previously-certified attorney; it includes sixteen reasons. The court cannot deduce how this section creates a property right.

Section 1.035 lists the requirements for certification, stating that the attorney must submit an application, must be licensed and in good standing with the State Bar of Wisconsin, must live or maintain his practice in Wisconsin, must complete certain continuing legal education requirements and must cooperate with inquiries. This section of the statute does not create any property rights.

22

Finally, the complaint mentions—not particularly helpfully—"and / or other pertinent sections of said code," leaving the reader to figure out which sections of the administrative code might provide the property right of which the plaintiff claims Pakes deprived him. Dkt. No. 1 at ¶21. The court has reviewed all provisions of WIS. ADMIN. CODE PD—sections 1.01 through 1.08. It can find nothing in any of these provisions that creates a property right for an attorney to be certified—or recertified—to be on the list of panel attorneys.

The plaintiff's surreply brief mentions Wis. Stat. §977.08(3). Dkt. No. 13 at 10. That statute describes the process for the SPD's preparation of the lists of certified attorneys and the procedures for appointing counsel. Nothing in that statute creates a right for an attorney to be certified or included on an appointment list. The closest §977.08(3) comes to creating a right at all is in §977.08(3)(b), where it provides that "[p]ersons may not be excluded from any list unless the state public defender states in writing the reasons for such action in the context of existing rules adopted by the state public defender board." To the extent that that language creates a right, it is a *procedural* right, not a property right.

The Supreme Court has, on at least one occasion, found that state regulations governing professional discipline of physicians "establish[] criteria for professional discipline and therefore create[] a 'property' interest in a blemish-free license to practice medicine." <u>Fleury v. Clayton</u>, 847 F.2d 1229, 1232 (7th Cir. 1988). The Seventh Circuit found that even though censure by the state's medical disciplinary board did not deprive the plaintiff doctor of his

23

"liberty" to practice his choice of profession, the statute's substantive criteria for discipline created a property interest in a "clean" license, requiring some kind of due process before censure. Id. at 1230-1232. The court reached this conclusion in part because "formal censure, designed to deter repetition of the conduct in question, may produce legal consequences" in the state. Id. at 1233.

That is not the case here. Section 1.03 does not create a property interest in being certified for the panel, and denial of recertification for the panel does not blemish or even implicate the plaintiff's license to practice law. An attorney may be decertified for failure to meet the education requirements, WIS. ADMIN. CODE PD §1.03(5)(b); for failure to follow the SPD's procedures for billing, WIS. ADMIN. CODE PD §1.03(5)(f); or for requesting to be removed from a certification list, WIS. ADMIN. CODE PD §1.03(5)(n). Decertification does not produce legal consequences for the attorney's license in Wisconsin.

The plaintiff has not identified any statute, regulation or procedural ordinance that creates a property right to be recertified to the SPD panel appointment list. That leaves only the question of whether there is some express or implied contract that creates that right.

The Supreme Court has held that a "public college professor dismissed from an office held during tenure provisions . . . and college professors and staff members dismissed during the terms of their contracts . . . have interests in continued employment that are safeguarded by due process." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576-77 (1972) (citing Slochower v. Bd. of Educ., 350 U.S. 441 (1956) and Wieman v. Updegraff, 355 U.S. 183 (1952)). It

24

has found that a teacher hired without tenure or formal contract was entitled to due process "with a clearly implied promise of continued employment." Id. at 577 (citing Connell v. Higginbotham, 403 U.S. 207, 208 (1971)). Read together, these cases dictate that

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

Id. at 577.

The plaintiff has not alleged that he had an agreement with the SPD that he would be recertified absent good cause. See, e.g., Charleston v. Bd. of Trustees of Univ. of Ill. at Chi., 741 F.3d 769, 773 (7th Cir. 2013). He has not alleged that there was some implied agreement that he would be recertified, and the statute provides that the SPD has the discretion to refuse to recertify attorneys for numerous reasons.

In sum, the plaintiff has not identified any source of a property right to be recertified by the SPD, or by Pakes. The plaintiff alleged only that Pakes "while acting in bad faith and in false pretense and rather pretextually on or [sic] December of 2019" "unjustifiably and pretextually refused to certify" the plaintiff, dkt. no. 1 at ¶12, that on February 28, 2020, his application was returned unprocessed dkt. no. 1 at ¶14, and that Pakes "unjustifiably, falsely and pretentiously refused to certify the above-named plaintiff for SPD appointments," dkt. no. 1 at ¶17. None of these allegations identify a property right that gives rise to due process protections under the Fourteenth Amendment of the U.S. Constitution.

25

The plaintiff's complaints boil down to allegations that Pakes and the SPD refused to certify him in violation of WIS. ADMIN. CODE PD §§1.01, *et seq.* Those are state-law claims, not cognizable in federal court under 42 U.S.C. §1983. Wis. Stat. §977.08(3)(b) provides a remedy for a lawyer who believes that he was inappropriately excluded from an SPD certification list. It appears that the plaintiff has availed himself of that remedy; as the defendants have noted, he has appealed the SPD's decision and the appeal has made its way to the Wisconsin Court of Appeals. The very fact that the plaintiff has utilized the remedies available under Wisconsin law shows that adequate state remedies were available to redress the deprivation, which means his claims are not actionable under §1983. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), partially overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-331 (1986); Mitchell v. Whiteleather, 248 F.3d 1158, at *1 (7th Cir. 2000) (unpublished).

Nor has the plaintiff stated a conspiracy claim under 42 U.S.C. §1985 as alleged in Count Three of the complaint. Section 1985(3) creates a civil action for damages caused by two or more persons who "conspire. . . for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy." 42 U.S.C. § 1985(3); see also §1985(1) (creating a civil action for preventing an officer from performing his or her duties). Presumably the plaintiff is alleging a conspiracy claim under §1985(3) because he is not an officer within the meaning of §1985(1).

26

Under §1985(3), the plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to a person or property or a deprivation of a right or privilege granted to U.S. citizens." Green v. Benden, 281 F.3d 661, 665 (7th Cir. 2002). To state a §1985(3) claim, a plaintiff must allege "a predicate race-based or class-based equal-protection violation." Thorncreek Apts. III, LLC v. Mick, 886 F.3d 626, 633 (7th Cir. 2018) (citing Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008)). "[C]lass-based" animus can be based on "sex, religion, ethnicity, or political loyalty." Id. (quoting Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir. 1988)); Thorncreek Apartments, 886 F.3d at 634 (recognizing that section 1985(3) requires a "predicate race-based or class-based equal-protection violation").

The plaintiff, a "duly licensed Wisconsin attorney," alleges that the defendants conspired to deprive him of his certification, "interfering with his profession and his right to practice law." Dkt. No. 1 at ¶¶7, 23. He further alleges

> [t]hat, while acting as a state actor, in furtherance of this conspiracy to violate Plaintiff's civil rights, the Director Pakes of SPD and SPD employee Kim Salas circumvented and misused under color of state law the Wis. Administrative Code, Ch. PD1: sec. 1.02, 1.03, 1.035 and by further unjustifiably and pretentiously refused to certify the above-named Plaintiff for SPD appointments.

Dkt. No. 1 at ¶24. The plaintiff claims that "this civil conspiracy culminated in burdening Plaintiff's civil rights and, in particular, his right to practice law in the State of Wisconsin, being duly licensed attorney admitted to practice of law before the Supreme Court for the State of Wisconsin since June 12, 2002." Id.

27

at ¶25. Nowhere in the complaint does the plaintiff allege that Pakes committed a race-based or class-based equal protection violation.

The only remaining federal cause of action appears in Count Two, "Cause of Action for Declaratory Judgment Pursuant to 28 U.S.C. §2201 for Civil Rights Violations Pursuant to 42 U.S.C. §1983." Dkt. No. 1 at p. 5. The plaintiff seeks a declaration that the defendants violated his civil rights but, as the court has explained, the plaintiff has failed to state a claim for a violation of his civil rights.

The remaining two claims—Count Four, spoliation of evidence, and Count Five, a violation of Wis. Stat. §134.01 for "willful and malicious conspiracy to harm or restrain practice of profession," dkt. no. 1 at 7, 9—arise under state law. Because the court will dismiss the federal claims, it declines to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3); RWJ Mgmt. Co., Inc. v. BP Prods. N.A., Inc., 672 F.3d 476, 479–80 (7th Cir. 2012) (when all federal claims are dismissed, there is a presumption that the court will relinquish jurisdiction over supplemental state law claims).

### e. Qualified Immunity

Defendant Pakes argues that the plaintiff has not identified "any discretionary conduct by her which would violate any clearly established statutory or constitutional rights of which a reasonable person would have known." Dkt. No. 9 at 7. While the court has held that the complaint fails to state a claim against Pakes for which a federal court may grant relief, the court notes that it is likely Pakes would be entitled to qualified, or "good faith,"

28

immunity even if the plaintiff had stated a claim against her. "[G]overnment officials performing discretionary functions generally are shielded from lability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1983) (citations omitted). Because the statute and regulations governing certification of panel attorneys give the SPD discretion in certifying and recertifying panel attorneys, the court is hard-pressed to determine how Pakes' discretionary decision to deny the plaintiff recertification could have violated any clearly established statutory or constitutional rights of which a reasonable person would have known. The plaintiff stated in his first opposition brief that the complaint "clearly plead that while engaging in plethora of discretionary functions [Pakes] personally sabotaged his recertification efforts." Dkt. No. 10 at 3. This broad, unsupported assertion is not sufficient to demonstrate a clearly established statutory or constitutional right.

In his surreply, the plaintiff also argued that the qualified immunity argument was "better suited for summary judgment." Dkt. No. 13-2 at 12. The plaintiff himself conceded, only sentences later, that there was no rule against resolving the issue of qualified immunity on the pleadings. Id.

f.    Remaining Arguments

The defendants also argued that the plaintiff's spoliation argument had been litigated and thus was barred by claim or issue preclusion, dkt. no. 9 at

8-9, and that his state-law claim under Wis. Stat. §134.01 was barred for several reasons, dkt. no. 9 at 9-11. The court need not reach these arguments.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to use PACER.gov for further plaintiff's fillings in the matter *sub judice*. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for order and request for substitution of Judge Pepper. Dkt. No. 5.

The court **GRANTS** the plaintiff's opposition to defendant's motion to dismiss and motion for leave to file late memorandum of law and fact in opposition to defendant's motion to dismis. Dkt. No. 10.

The court **GRANTS** the plaintiff's motion for leave to allow late filling of plaintiff's memorandum of law and fact in opposition to defendant's motion to dismis. Dkt. No. 13.

The court **GRANTS** the defendants' motion to dismiss as to the plaintiff's federal claims. Dkt. No. 8.

The court **DECLINES** to exercise supplemental jurisdiction over the plaintiff's state law claims.

The court **DISMISSES** this case. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 5th day of January, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

30